## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DARLENE DAUGHTRY,      :
KELVIN DAUGHTRY,      :    CIVIL ACTION
HOPE McCAIN,      :
CANDACE R. SAUNDERS,      :
CLAUDIA M. BENSON,      :    No. 08-963 SLR
SYLVIA COOPER,      :
MONIQUE WALKER, and      :
DAISY L. HARRIS,      :    JURY TRIAL DEMANDED
      :
    Plaintiffs      :
      :
      v.      :
      :
FAMILY DOLLAR STORES INC., :
a Delaware corporation,      :
      :
    Defendant.      :

## FIRST AMENDED COMPLAINT[1]

This is a Section 1981 and Title VII case of retaliation and discrimination because of

race, sex and religion in the terms, the conditions, and the eventual termination of employment of

eight African-American former employees of the Defendant retail chain.  Plaintiffs Darlene

Daughtry, Kelvin Daughtry, Hope McCain, Candace R. Saunders, Claudia M. Benson, Sylvia

Cooper, Monique Walker and Daisy L. Harris, by and through their undersigned counsel,

---

[1]  Plaintiffs filed their original complaint on December 23, 2008.  Defendant has filed a motion to dismiss but has not filed an Answer.  Rule 15(a) of the Federal Rules of Civil Procedure provides in part that "[a] party may amend the party's pleading once as a matter of course . . . before being served with a responsive pleading[.]" The motion to dismiss is not a responsive pleading.  Centifanti v. Nix, 865 F.2d 1422, 1431 n.9 (3d Cir. 1989)(holding that plaintiff was entitled "as a matter of course" to amend his complaint without leave of court).  Here too, because no responsive pleading has been served, the Complaint is amended as a matter of right pursuant to Fed.R.Civ.P. 15(a).  Specifically, amendments are made to the caption, the title, the introductory paragraph, ¶¶ 2, 7, 17, 18, 86, 95, 108, 116, 116(a), 116(b), 116(c), 121, 121(a), 123(b), 123(c), 123(d), 127, 133 and 134, and the headings to Counts I, III and IV.  The allegations as pleaded in this First Amended Complaint now make Defendant's motion moot. Therefore, Plaintiffs respectfully request that the motion be denied and waive their right to file an answering brief in response to the now moot motion.

John Wendell Beavers, Esquire, of John Wendell Beavers & Associates and John M. LaRosa,

Esquire, of the Law Office of John M. LaRosa, claim of Defendant Family Dollar Stores, Inc.

damages and other relief and represent in support thereof the following:

## <u>INTRODUCTION</u>

1.      This is a retaliation and racial, sexual, and religious discrimination in employment

action for declaratory, monetary and other relief brought by plaintiffs Darlene Daughtry, Kelvin

Daughtry, Hope McCain, Candace R. Saunders, Claudia M. Benson, Sylvia Cooper, Monique

Walker and Daisy L. Harris to redress intentional violations by Defendant Family Dollar Stores,

Inc. of rights secured to them by the laws of the United States and the relevant states.

2.      This action arises under the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the

Civil Rights Act of 1964, 42 U.S.C. Section 2000e et. seq., as amended by the Civil Rights Act

of 1991 and 42 U.S.C. Section 1981a (hereinafter "Title VII") and the statutory and common law

of the State of Delaware and the State of New Jersey.

## <u>JURISDICTION</u>

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343;

the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1991, Pub.L. No. 102-

166, 105 Stat. 1071, 42 U.S.C. § 1981a; and Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e et seq. ("Title VII").

4.      Pursuant to the Local Rule of Civil Procedure 9.4 of the District of Delaware

which prohibits the averment of specific monetary damages, Plaintiffs aver only that the amount

in controversy exceeds the jurisdictional amount of One Hundred Thousand ($100,000.00)

Dollars, exclusive of interest and costs.

5.      Plaintiffs' state claims are before this Court pursuant to its supplemental jurisdiction as codified at 28 U.S.C. Section 1367.

6.      Plaintiffs have exhausted all administrative remedies having filed timely charges of discrimination with the EEOC and each having received "Right to Sue" letters issued on or about October 2, 2008.

## VENUE

7.      All actions complained of herein involve a Defendant incorporated in Delaware with offices and regular places of business within the jurisdictional limits of the District Court for the District of Delaware.  Defendant employed all Plaintiffs in its district number 144 which, at the time each was discharged, encompassed parts of New Jersey and Delaware.  Because Defendant resides in this judicial district, and alternatively, because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, venue is proper in this district under 28 U.S.C. § 1391(b) and Sinwell v. Shapp, 536 F.2d 15, 17 (3d Cir. 1976) (holding that where a complaint is based on 42 U.S.C. § 1981, the district court should properly refer to the general venue provisions of 28 U.S.C. § 1391(b)).

## PARTIES

9.      Darlene Daughtry is an American citizen of African-American descent who resides at 205 White Pine Court, Bear, Delaware, and is a citizen of the State of Delaware.

10.      Kelvin Daughtry is an American citizen of African-American descent who resides at 205 White Pine Court, Bear, Delaware, and is a citizen of the State of Delaware.

11.      Hope McCain is an American citizen of African-American descent who resides at 2412 N. Market St, Apt. 410, Wilmington, Delaware 19802, and is a citizen of the State of Delaware.

12.     Candace R. Saunders is an American citizen of African-American descent who resides at 207 West Plover Drive, Newark, Delaware 19702, and is a citizen of the State of Delaware.

13.     Claudia M. Benson is an American citizen of African-American descent who resides at 6541 Torresdale Avenue, Philadelphia, Pennsylvania 19135, and is a citizen of the Commonwealth of Pennsylvania.

14.     Sylvia Cooper is an American citizen of African-American descent who resides at 7421 Gilbert Street, Philadelphia, Pennsylvania 19138, and is a citizen of the Commonwealth of Pennsylvania.

15.     Monique Walker is an American citizen of African-American descent who resides at 4934 Ormes Street, Philadelphia, Pennsylvania, 19140, and is a citizen of the Commonwealth of Pennsylvania.

16.     Daisy L. Harris is an American citizen of African-American descent who resides at 37 South Pine Street, Cumberland, New Jersey 08302, and is a citizen of the State of New Jersey.

17.     Defendant Family Dollar Stores is a Delaware corporation engaged in the retail sale of consumer products, with its home office located at 10401 Monroe Road, Charlotte, North Carolina 28201-1017, and with places of business at 2082 New Castle Avenue, New Castle, Delaware; 10 S. Virginia Avenue, Penns Grove, New Jersey; 235 S. Broadway, Pennsville, New Jersey; 1109 Fifth St., Salem, New Jersey; and 31 Broad St. St., Ste. 3-A, Bridgeton, New Jersey, sites of the actions described herein.  Defendant maintains several subsidiary corporations, including Family Dollar Stores of New Jersey and Family Dollar Stores of Delaware, over which Defendant exerts full financial control, exerts control of labor relations and operations

centralized in its Charlotte office, and imposes a common management scheme geared toward maintenance of an integrated enterprise holding itself and its subsidiaries out to the public jointly as Family Dollar, Inc. Defendant's registered agent for service of process is The Prentice-Hall Corporation System, Inc., with a registered address of 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

18.     Defendant is engaged in an industry affecting interstate commerce and is an employer within the meaning of all applicable legislation cited herein and has engaged in a pattern of retaliation and racial, sexual, and religious discrimination as set forth below.

## FACTUAL ALLEGATIONS

### DARLENE DAUGHTRY

19.     The statements made in paragraphs 1 through 18 above are incorporated herein as if fully set forth below.

20.     Plaintiff Darlene Daughtry was hired in or about September 2002, as a Manager, and was promoted to District Manager on September 9, 2003.

21.     In or about May 2006, Plaintiff was told by George Flyzik, Regional Vice President that she was going to be fired because the inventory at store 2216 was looking to be short.

22.     After pointing out that other stores had shortages of twice as much, she was then told that she would have to step down to Store Manager by June 1, 2006. She became a Store Manager in the New Castle store effective June 6, 2006.

23.     In or about December 2006 or January 2007, Plaintiff received a call from an Investigator from the Delaware Department of Labor.

24.     Plaintiff provided information in support of Tara Valdez who had filed a charge of employment discrimination.

25.     Shortly thereafter, Plaintiff received a call from the Defendant's representatives who informed her not to have any conversation with anyone from the Labor Board after she refused to agree to make statements to the Labor Board as demanded by defendants.

26.     In October of 2007, Gus Stifano, District Manager came to Plaintiff's store and informed her that George Flyzik and Allen Field wanted him to fire her.  Gus Stifano stated that he wanted to keep her on.

27.     On February 19, 2007, Plaintiff's store was investigated by Loss Prevention, but all employees supervised by Plaintiff were interviewed not about work, but about Plaintiff.

28.     Within two days of the investigation, six employees were terminated.  Upon information and belief, they were terminated because they failed to provide any information to help Defendant terminate her.

29.     In February 2007, Plaintiff hired a new Cashier, Carl Evans. He was promoted to Assistant Manager in March, 2007.

30     Due to illness, Plaintiff was out of work from March 18th to April 10th.

31.     Before returning to work, Plaintiff came in to check paperwork because her Assistant Monique Walker reported that money was missing and she could not find it.  Plaintiff also checked the paperwork and could not find it.

32.     Plaintiff called Gus Stifano, and he stated that Loss Prevention, Chris Benson, was coming up to investigate, and asked for Carl Evan's phone number.

33.     Carl Evans met with Gus Stifano and Loss Prevention at another location, where he admitted that he was stealing money.

34.     Plaintiff returned to work on April 9, 2007, and received a call from Gus Stifano, and he asked her to meet with him on April 12, 2007, to help him do an inventory workdown. Later that day, she sustained a work-related injury and was in the hospital.

35.     Later, Gus called Plaintiff Darlene Daughtry on her cell phone and stated that although Plaintiff had just gotten out of the hospital, he needed her to come to the store.

36.     When Plaintiff arrived at the store, Corporate was there. Plaintiff was interviewed by the head of Loss Prevention, Bill [last known name unknown to Plaintiff].

37.     About a week later, Bill [last name unknown to Plaintiff] called and stated that there was a complaint about a customer overhearing the Plaintiff yelling at an employee that he had forgotten to mention to Plaintiff in the prior interview.  The Plaintiff informed Bill that she never yelled at any of her employees and that all he had to do was to ask any one of them.

38.     On April 20, 2007, Plaintiff received a call from Gus Stifano, who stated that Plaintiff was not to return and demanded her keys.  Plaintiff asked him why was she being terminated and he stated, "You and I know the reason."

39.     Upon information and belief, Plaintiff was discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because Defendant knew that she provided information to the Labor Board on behalf of two employees and because she was a Black female.

<u>KELVIN DAUGHTRY</u>

40.     The statements made in paragraphs 1 through 39 above are incorporated herein as if fully set forth below.

41.    Plaintiff Kelvin Daughtry was hired in or about December 2004, as a Store Manager for several New Jersey stores; he ultimately ended up at the Pennsville, New Jersey store around April 2006.

42.    Plaintiff was informed by his former District Manager, Ed Conrad that the Company wanted to fire him because of his wife (Darlene Daughtry).  Conrad told Plaintiff that Defendant had asked him (Conrad) to find documents so they could fire Plaintiff.

43.    On May 8, 2007, Gus Stifano, District Manager, came to Plaintiff Kelvin Daughtry's store and wrote him up for not having his schematics done.

44.    Plaintiff failed to complete the schematics by the deadline due to shortage of staff and a personal injury.

45.    On May 25, 2007, Plaintiff went on vacation.  Upon his return on June 4, 2007, he received a call from Gus Stifano asking him whether he would be available on June 6, 2007.

46.    Plaintiff informed Gus Stifano that his uncle died, and he may not be available on that date. Gus Stifano said that he needed Plaintiff to be there on June 6, 2007, to discuss some things.  Plaintiff responded that he would let him know.

47.    Sometime around 2:30 p.m. on May 25, 2007, Plaintiff received a call from an employee from the New Castle store who told him that her Assistant Manager, Anna Marie, just told her that Gus Stifano called to let her know that he would be promoting her on June 6, 2007, and that she would be the new manager of the Pennsville, New Jersey store.

48.    Plaintiff found this to be strange since he was the Manager of that store.

49.    Gus Stifano told Anna Marie not to tell anyone where she was going because Plaintiff Kelvin Daughtry was the manager and did not know that he was being fired.

50.     Gus Stifano called Plaintiff again and asked if he would be at the meeting on June 6, 2007.  Plaintiff told him "yes" and then asked if there was something he needed to be aware of.  Gus Stifano responded "no," that it was just a "regular" visit.

51.     On June 6, 2007, Gus Stifano informed Plaintiff that he was being terminated. The reason given for terminating Plaintiff was "personal business conflicts with your obligation to serve the best interest of the company."

52.     Upon information and belief, Defendant believed that Plaintiff Kelvin Daughtry testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII.

53.     Upon information and belief, Plaintiff Kelvin Daughtry was retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, in that he was fired because his wife, Darlene Daughtry, filed a charge of employment discrimination on May 23, 2007, against the same employer, and Defendant believed that Plaintiff Kelvin Daughtry testified, assisted, or participated in her investigation, proceeding, or hearing under Title VII.

<u>HOPE MCCAIN</u>

54.     The statements made in paragraphs 1 through 53 above are incorporated herein as if fully set forth below.

55.     Plaintiff Hope McCain was hired in or about March 2005, as a Cashier, and in or about January 2006, she was promoted to Assistant Manager.

56.     Plaintiff was supervised by Darlene Daughtry.

57.     The store that Plaintiff worked in was under investigation and Defendant's management was looking for evidence to use against Darlene Daughtry because she provided testimony supporting two women who had filed charges against the Defendant.

58.    On or about February 19, 2007, George Flyzik, Regional Vice President, came to the store to talk to Darlene Daughtry.

59.    Plaintiff was in the restroom when Flyzik was in the backroom of the store talking on his cell phone. He was taking to Gus Stifano, District Manager. Plaintiff heard him say words to the effect that, "I thought you said that you fired all these niggers especially the Black females and that Darlene [Daughtry] would be gone already too." Then he said "make it happen fast" and then he hung up.

60.    Plaintiff came out of the restroom and confronted Flyzik. She approached him by saying, "I don't know who you were calling a nigger, I'm not nobody's nigger."

61.    Flyzik asked Plaintiff her name and stated "if you know what is best for you, you will keep your mouth shut." Plaintiff Darlene Daughtry was then told there were reasons for McCain's termination. Each time Darlene Daughtry was given a reason to fire Plaintiff McCain, she argued with Chris Benson of Loss Prevention saying that the stated reason was not true and the firing was in retaliation. Chris Benson called Plaintiff Darlene Daughtry one final time and said, "terminate her for failure to protect company assets". Darlene Daughtry terminated the Plaintiff but because she disagreed, she used "per Loss Prevention" as the reason.

62.    Two weeks later, Plaintiff McCain was terminated. The reason given for her termination was that her background was bad.

63.    Plaintiff was also told that she had lied on her application because she did not put in any employment history; however, Plaintiff had never worked before.

64.    Upon information and belief, Plaintiff McCain was discriminated against because of her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

## CANDACE R. SAUNDERS

65.     The statements made in paragraphs 1 through 64 above are incorporated herein as if fully set forth below.

66.     Plaintiff Candace R. Saunders was hired on or about February 25, 2007, as a Cashier/Training Assistant Manager.  She was supervised by Darlene Daughtry.

67.     After being hired, Plaintiff was told that Defendant was trying to get rid of Darlene Daughtry because she provided testimony supporting two women who had filed charges against the Defendant.

68.     Darlene Daughtry went out on a medical leave due to a work-related injury, and while she was out, Defendant hired a new Store Manager.

69.     Plaintiff met the new Store Manager on April 30, 2007, and he said that he was the new sheriff in town.

70.     The new Store Manager asked who was loyal to Family Dollar and who was loyal to Darlene Daughtry, and Plaintiff stated that she was loyal to Darlene Daughtry because she hadn't done anything to her.

71.     On May 1, 2007, while working, Plaintiff overheard the new Store Manager and another Manager talking.  The Store Manager said, "it looks as if all Darlene did was hire a bunch of lazy-ass niggers in this store, especially the fat and lazy one", referring to Plaintiff.

72.     Plaintiff made known that she had overheard the comment and said, "excuse me" and the Store Manager said it was just a joke.

73.     After going out to lunch and returning, Plaintiff was called into the office and informed that she was terminated.  She was told that she wasn't what he wanted in an employee, and she didn't fit his work ethic.

74.    Upon information and belief, Plaintiff was discriminated against because of her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

## CLAUDIA M. BENSON

75.    The statements made in paragraphs 1 through 74 above are incorporated herein as if fully set forth below.

76.    On or about November 19, 2006, Plaintiff Claudia M. Benson was demoted from the position of Store Manager to Assistant Manager, and on December 7, 2006, she was discharged.  She had been employed since May 14, 2006.

77.    Gus Stifano, District Manager, told Plaintiff Claudia Benson that he had complaints about her being rude to employees and customers and that she was seen leaving the store with D-100 items.

78.    Stifano gave Plaintiff the option of going to a lower volume store or quitting.  He told Plaintiff that she was discharged for insubordination.

79.    Plaintiff's District Manager (prior to Gus Sifano's appointment as District Manager) told her that he was going to get rid of all the Black female managers in his district.

80.    Gus Stifano told Plaintiff Darlene Daughtry, "You hired a Black Muslim [meaning Plaintiff Benson], are you sure she's not going to bomb the company?"

81.    Upon information and belief, Plaintiff was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of her race, sex, and religion.

## SYLVIA COOPER

82.    The statements made in paragraphs 1 through 81 above are incorporated herein as if fully set forth below.

83.     Plaintiff was hired as a Manager on May 14, 2006, at the defendant's store located in Salem, New Jersey.  Throughout her employment, she has always performed her job in a competent manner and had never been disciplined for any performance or conduct related issues.

84.     During her employment, Plaintiff was responsible for eight subordinates of whom three were on call and five were regular employees.

85.     In and around August 2006, Gus Stifano was appointed District Manager and also became Plaintiff's immediate supervisor.

86.     Throughout her employment, Plaintiff's store was plagued with numerous incidents of theft.  Additionally, Plaintiff was threatened with physical harm by customers.

87.     Plaintiff complained about these problems to Gus Stifano.

88.     On December 7, 2007, Plaintiff was informed by Gus Stifano that her employment was terminated, due to shrinkage (theft) and too many D-100's (damaged merchandise).

89.     Upon information and belief, Plaintiff has been discriminated against because of her race and sex, in violation of Title VII of the Civil Rights Act of 1964, as amended.

<u>MONIQUE WALKER</u>

90.     The statements made in paragraphs 1 through 89 above are incorporated herein as if fully set forth below.

91.     Plaintiff was hired in or about October 2002, as a Cashier. In or about October 2003, she was promoted to Assistant Manager working in Middletown, Delaware.

92.     Darlene Daughtry was Plaintiff's Manager.

93.     Since about 2005, the store that Plaintiff worked at in New Castle was under investigation by Gus Stifano and Loss Prevention.

94.     On April 20, 2007, Darlene Daughtry was terminated.  On April 30, 2007, Gus Stifano told Plaintiff that if she continued to communicate with Darlene Daughtry, that the company could not use her.

95.     Plaintiff told Gus Stifano that she didn't have any problems with Darlene Daughtry, and she was then told to return her keys and leave the premises.  Upon information and belief, Defendant believed that Plaintiff Monique Walker opposed the unlawful discriminatory treatment of Darlene Daughtry, which she in fact, did.  Defendant also believed that Plaintiff Monique Walker supported Darlene Daughtry's participation in the Tara Valdez investigation.  Upon information and belief, Plaintiff Monique Walker was retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, in that she was fired because she supported her manager, Darlene Daughtry, in the Tara Valdez discrimination investigation, and opposed the defendant's unlawful and discriminatory treatment of Darlene Daughtry.

96.     Upon information and belief, Plaintiff was discriminated against on the basis of race and sex, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of her support of her store manager, Ms. Daughtry.

<u>DAISY L. HARRIS</u>

97.     The statements made in paragraphs 1 through 96 above are incorporated herein as if fully set forth below.

98.      Plaintiff was hired on November 27, 1997, as a part-time cashier, promoted to Assistant Store Manager in 1998, and on December 27, 1998, she was promoted to Store Manager.

99.     Throughout her employment she has always performed her job in a competent manner and was never disciplined for any performance or conduct related problems.

100.    In and around September of 2006, Gus Stifano became District Manager and Plaintiff's immediate supervisor.

101.    Since Stifano's appointment as District Manager, he had made several racial as well as gender-based offensive comments.

102.    For example, in September of 2006, he commented that Plaintiff should refer to him as "Master Gus."

103.    On several occasions, Gus Stifano commented, "Maybe the job is too much for you. After all, you are not that smart." Stifano made other comments that were demeaning and humiliating to the sensibilities of ordinary human beings.

104.    On February 27, 2007, Gus Stifano informed Plaintiff that her employment was terminated.

105.    The reasons Stifano gave for his action was because he did not want any Black females working for him in his district. Stifano further stated that all that Black females could do for him was to unload trucks and unload freight.

106.    Upon information and belief, Plaintiff has been discriminated against on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

<u>Relationship Among Plaintiffs</u>

107.    The above discrimination and harassment created a hostile environment based on race, sex, and religion which was allowed to persist by Defendant Family Dollar Stores.

108.    At all times material hereto, Plaintiffs have been excellent employees of Family Dollar Stores despite the hostile work environment based on retaliatory conduct and discrimination because of race, sex, and religion to which they have been subjected while working at the Family Dollar Stores locations within District 144 in New Jersey and Delaware.

109.    The actions of Defendant Family Dollar Stores constitute a continuing pattern and practice of improper and illegal racial, sexual, and religious harassment, retaliation and discrimination and continuing violation of the laws of the United States and state laws.

110.    As a result of the deliberate, unlawful and malicious actions of Defendant based on Plaintiffs' race, sex and religion, Plaintiffs have suffered loss of employment, benefits, earnings and earning potential.

111.    As a direct result of the deliberate, unlawful and malicious actions of Defendant, Plaintiffs have suffered humiliation and severe and profound emotional and psychological distress.

112.    The Defendant's actions, as described hereinabove, shock the sensibilities of ordinary human beings.

<u>Other Allegations Regarding Defendant's Conduct</u>

113.    The actions of the Defendant were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federally protected rights.  Defendant either knew or showed a negligent or reckless disregard for the matter of whether its conduct violated federal rights.  Its actions were outrageous and taken with evil or improper motive, in bad faith, out of personal animus or motivated by bias and without any reasonable grounds to support them.  Their actions were wanton and malicious or taken with reckless indifference to federally protected rights.

114.    Additionally, Defendant, its agents, and employees engaged in the discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights, and Defendant is liable for punitive damages pursuant to 42 U.S.C. Section 1981a(b).

## COUNT I

### Defendant's Violation of the Civil Rights Act of 1964
### 42 U.S.C. Section 2000e, et seq.
### [Racial, sexual, retaliatory and religious discrimination]

115.    Plaintiffs incorporate paragraph 1 through 114 herein as if the same were set forth at length below.

116.    Defendant Family Dollar Stores violated the provisions of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et. seq., in that it discriminated against Plaintiffs on account of their race, sex, and/or by retaliation, by allowing a cruel, racist, sexist, anti-muslim and hostile work environment to exist at its store locations as evidenced by, *inter alia*:

(a)    condoning its workers' actions and at times, participating in its workers' actions in demeaning Plaintiffs, physically intimidating them and using against them the crudest racial and sexist slurs, which created a brutally cruel and hostile working environment;

(b)    belittling Plaintiffs' complaints about racist and sexist jokes and slurs; and

(c)    violating its own internal policies and procedures which reflect the requirements of the laws set forth herein so as to allow the racist and hostile work environment and retaliatory actions to continue to exist.

**WHEREFORE,** Plaintiffs Darlene Daughtry, Kelvin Daughtry, Hope McCain, Candace R. Saunders, Claudia M. Benson, Sylvia Cooper, Monique Walker and Daisy L. Harris respectfully request this Honorable Court:

(a)    Enter a declaratory judgment that Defendant's acts, policies, practices and procedures complained of herein have violated and continue to violate the rights of Plaintiffs as secured to them by federal and state legislative enactments;

(b)    Award to Plaintiffs damages for lost incomes, lost income and growth opportunities, and all benefits lost due to the actions of Defendant;

(c)    Award to Plaintiffs damages in compensation for humiliation, loss of reputation and status in the community of their peers and the loss of their ability to provide themselves and their family with the rewards of their years of hard work in their chosen occupation;

(d)    Award to Plaintiffs punitive damages in an amount appropriate under the circumstances;

(e)    Grant to Plaintiffs compensation for pain and suffering and other damages in accordance with the appropriate state and federal enactments in an amount appropriate under the circumstances;

(f)    Grant to Plaintiffs costs, disbursements and reasonable attorneys' fees; and

(g)    Grant to Plaintiffs such additional relief as the Court deems just and proper under the circumstances.

## COUNT II
### Defendant's Violation of the Civil Rights Act of 1866
### 42 U.S.C. Section 1981

117.    Plaintiffs incorporate paragraphs 1 through 116 herein as if the same were set forth at length below.

118.    Defendant violated the provisions of the Civil Rights Act of 1866, as amended, 42 U.S.C. Section 1981, in that Defendant discriminated against Plaintiffs on account of their race and in derogation of their rights to make and enforce contracts, as evidenced by, *inter alia*:

(a)    condoning its workers' actions, and at times, participating in its workers'

actions in demeaning Plaintiffs, physically intimidating them and using against

them the crudest racial slurs, which created a brutally cruel and hostile working

environment; and

(b)    belittling Plaintiffs' complaints about racist jokes and slurs.

119.    Said actions of Defendant were taken with malice and with invidious

discriminatory intent.

**WHEREFORE,** Plaintiffs Darlene Daughtry, Kelvin Daughtry, Hope McCain, Candace

R. Saunders, Claudia M. Benson, Sylvia Cooper, Monique Walker and Daisy L. Harris

respectfully request this Honorable Court:

(a)    Enter a declaratory judgment that Defendant's acts, policies, practices and

procedures complained of herein have violated and continue to violate the rights of

Plaintiffs as secured to them by federal and state legislative enactments;

(b)    Award to Plaintiffs damages for lost incomes, lost income and growth

opportunities and all benefits lost due to the actions of Defendant;

(c)    Award to Plaintiffs damages in compensation for humiliation, loss of

reputation and status in the community of their peers and the loss of their ability to

provide themselves and their family with the rewards of their years of hard work in their

chosen occupation;

(d)    Award to Plaintiffs punitive damages in an amount appropriate under the

circumstances;

(e)    Grant to Plaintiffs compensation for pain and suffering and other damages

in accordance with the appropriate state and federal enactments in an amount appropriate

under the circumstances;

(f)    Grant to Plaintiffs costs, disbursements and reasonable attorneys' fees; and

(g)    Grant to Plaintiffs such additional relief as the Court deems just and

proper under the circumstances.

### COUNT III
### Defendant's Violation of the
### Delaware Discrimination in Employment Act, 16 Del. Code § 711(a)
### [Racial, sexual, retaliatory and religious Discrimination]

120.    Plaintiffs incorporate paragraphs 1 through 117 herein as if the same were set

forth at length hereat.

121.    Defendant violated the provisions of the Delaware Discrimination in Employment

Act, 16 Del. Code § 711(a), in that it discriminated against Plaintiffs on account of their race,

sex, and/or by retaliation, as evidenced by, *inter alia*,

(a)    condoning its workers' actions and at times, participating in its workers'

actions in demeaning Plaintiffs, physically intimidating them and using

against them the crudest racial, sexual and religious slurs which created a

brutally cruel, retaliatory, and hostile working environment;

(b)    denying Plaintiffs the opportunity for promotion and advancement because

of the continued presence of racist personnel, including supervisory

personnel, located in the store where Plaintiffs worked;

(c)    ignoring Plaintiffs' complaints to management regarding the racial, sexual

and religious discrimination and harassment; and

(d)    belittling Plaintiffs' complaints about racial jokes and slurs.

**WHEREFORE,** Plaintiffs Darlene Daughtry, Hope McCain, Candace R. Saunders and

Monique Walker respectfully request this Honorable Court to:

(a)    Enter a declaratory judgment that Defendant's acts, policies, practices and procedures complained of herein have violated and continue to violate the rights of Plaintiffs as secured to them by federal and state legislative enactments;

(b)    Award to Plaintiffs damages for lost incomes, lost income and growth opportunities and all benefits lost due to the actions of Defendant;

(c)    Award to Plaintiffs damages in compensation for humiliation, loss of reputation and status in the community of their peers and the loss of their ability to provide themselves and their families with the rewards of their years of hard work in their chosen occupation;

(d)    Award to Plaintiffs punitive damages in an amount appropriate under the circumstances;

(e)    Grant to Plaintiffs compensation for pain and suffering and other damages in accordance with the appropriate state and federal enactments in an amount appropriate under the circumstances;

(f)    Grant to Plaintiffs costs, disbursements and reasonable attorneys' fees; and

(g)    Grant to Plaintiffs such additional relief as the Court deems just and proper under the circumstances.

## COUNT IV
### Defendant's Violation of the
### New Jersey Law Against Discrimination, N.J.S. 10:5-1 *et seq.*
### [Racial, sexual, retaliation and religious Discrimination]

122.    Plaintiffs incorporate paragraphs 1 through 121 herein as if the same were set forth at length hereat.

123.    Defendant violated the provisions of the New Jersey Law Against Discrimination, N.J.S. 10:5-1 et seq., in that it discriminated against Plaintiffs on account of their race, sex, religion and/or by retaliation, as evidenced by, *inter alia*,

    (a)    condoning its workers' actions and at times, participating in its workers' actions in demeaning Plaintiffs, physically intimidating them and using against them the crudest racial, sexual and religious slurs which created a brutally cruel and hostile working environment;

    (b)    denying Plaintiffs the opportunity for promotion and advancement because of the continued presence of racist, sexist, and anti-muslim personnel, including supervisory personnel, located in the store(s) where Plaintiffs worked;

    (c)    ignoring Plaintiffs' complaints to management regarding the racial, sexual and religious discrimination and harassment and retaliating against the complainant for opposing such practices; and

    (d)    belittling Plaintiffs' complaints about racial, sexist and religious jokes and slurs.

**WHEREFORE,** Plaintiffs Kelvin Daughtry, Claudia M. Benson, Sylvia Cooper, and Daisy L. Harris respectfully request this Honorable Court:

    (a)    Enter a declaratory judgment that Defendant's acts, policies, practices and procedures complained of herein have violated and continue to violate the rights of Plaintiffs as secured to them by federal and state legislative enactments;

    (b)    Award to Plaintiffs damages for lost incomes, lost income and growth opportunities and all benefits lost due to the actions of Defendant;

(c)    Award to Plaintiffs damages in compensation for humiliation, loss of reputation and status in the community of their peers and the loss of their ability to provide themselves and their family with the rewards of their years of hard work in their chosen occupation;

(d)    Award to Plaintiffs punitive damages in an amount appropriate under the circumstances;

(e)    Grant to Plaintiffs compensation for pain and suffering and other damages in accordance with the appropriate state and federal enactments in an amount appropriate under the circumstances;

(f)    Grant to Plaintiffs costs, disbursements and reasonable attorneys' fees; and

(g)    Grant to Plaintiffs such additional relief as the Court deems just and proper under the circumstances.

## COUNT V
### (Discharge In Retaliation For
### Opposing Illegal Practices-Title VII and § 1981)

124.    The statements made in paragraphs 1 through 123 above are incorporated herein as if fully set forth below.

125.    Plaintiff Darlene Daughtry opposed practices made illegal by Title VII and § 1981. Defendants retaliated against her for her opposition and discharged her. There is a causal connection between Plaintiff's opposition and Defendant's retaliation. Any non-retaliatory reason given by the Defendant is a pretext for retaliation.

126.    Any stated legitimate non-discriminatory reason offered by the Defendant for their actions is a pretext for retaliation and intentional discrimination based on race and sex. Any reason offered by the Defendant is unworthy of credence since Plaintiff can demonstrate such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that the Defendant did not act for the asserted non-discriminatory reason.

127.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's race.  In the alternative, any reasons provided by the Defendant for the treatment of Plaintiff are pretextual and a cover up for retaliation and discrimination.

128.    Plaintiff's rights were violated under Title VII and § 1981 because she was discharged or otherwise discriminated against in retaliation for opposing illegal practices and on the basis of her race and sex.

129.    Plaintiffs' statutory right to be free of retaliation and discrimination has been denied under Title VII.

**WHEREFORE,** Plaintiff Darlene Daughtry respectfully requests this Honorable Court:

(a)    Enter a declaratory judgment that Defendant's acts, policies, practices and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured to her by federal and state legislative enactments;

(b)    Award to Plaintiff damages for lost incomes, lost income and growth opportunities and all benefits lost due to the actions of Defendant;

(c)    Award to Plaintiff damages in compensation for humiliation, loss of reputation and status in the community of her peers and the loss of her ability to provide herself and her family with the rewards of her years of hard work in her chosen occupation;

(d)    Award to Plaintiff punitive damages in an amount appropriate under the circumstances;

(e)    Grant to Plaintiff compensation for pain and suffering and other damages in accordance with the appropriate state and federal enactments in an amount appropriate under the circumstances;

(f)    Grant to Plaintiff costs, disbursements and reasonable attorneys' fees; and

(g)    Grant to Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT VI
### (Discharge In Retaliation For
### Perceived Assistance to Opposition to Illegal Practices
### -Title VII and § 1981)

130.    The statements made in paragraphs 1 through 129 above are incorporated herein as if fully set forth below.

131.    Plaintiff Darlene Daughtry opposed practices made illegal by Title VII and § 1981.  Upon information and belief, Defendant believed that her husband Plaintiff Kelvin Daughtry testified, assisted, or participated in her investigation, proceeding, or hearing under Title VII.

132.    Upon information and belief, Plaintiff Kelvin Daughtry was retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, in that he was fired because his wife, Darlene Daughtry, filed a charge of employment discrimination against the same employer, and Defendant believed that Plaintiff Kelvin Daughtry testified, assisted, or participated in her investigation, proceeding, or hearing under Title VII.

133.    Defendant believed that Plaintiff Monique Walker opposed the unlawful discriminatory treatment of Darlene Daughtry, which she in fact, did.  Defendant also believed

that Plaintiff Monique Walker supported Darlene Daughtry's participation in the Tara Valdez investigation.

134.    Upon information and belief, Plaintiff Monique Walker was retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, in that she was fired because she supported her manager, Darlene Daughtry, in the Tara Valdez discrimination investigation, and opposed the defendant's unlawful and discriminatory treatment of Darlene Daughtry.

135.    Upon information and belief, Plaintiff was retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of her support of her store manager, Ms. Daughtry.

136.    Any stated legitimate non-discriminatory reason offered by the Defendant for its actions is a pretext for retaliation and intentional discrimination.  Any reason offered by the Defendant is unworthy of credence since Plaintiffs can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that the Defendant did not act for the asserted non-discriminatory reason.

134.    Alternatively, Plaintiffs can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was retaliation.  In the alternative, any reasons provided by the Defendant for the treatment of Plaintiffs are pretextual and a cover up for retaliation and discrimination.

135.    Plaintiff's rights were violated under Title VII and § 1981 because they were discharged or otherwise discriminated against in retaliation for opposing illegal practices.

136.    Plaintiffs' statutory right to be free of retaliation and discrimination has been

denied under Title VII.

**WHEREFORE,** Plaintiffs Kelvin Daughtry and Monique Walker respectfully request this Honorable Court:

(a)     Enter a declaratory judgment that Defendant's acts, policies, practices and procedures complained of herein have violated and continue to violate the rights of Plaintiffs as secured to them by federal and state legislative enactments;

(b)     Award to Plaintiffs damages for lost incomes, lost income and growth opportunities and all benefits lost due to the actions of Defendant;

(c)     Award to Plaintiffs damages in compensation for humiliation, loss of reputation and status in the community of their peers and the loss of their ability to provide themselves and their family with the rewards of their years of hard work in their chosen occupation;

(d)     Award to Plaintiffs punitive damages in an amount appropriate under the circumstances;

(e)     Grant to Plaintiffs compensation for pain and suffering and other damages in accordance with the appropriate state and federal enactments in an amount appropriate under the circumstances;

(f)     Grant to Plaintiffs costs, disbursements and reasonable attorneys' fees; and

(g)     Grant to Plaintiffs such additional relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

**LAW OFFICE OF JOHN M. LaROSA**                **JOHN WENDELL BEAVERS & ASSOCIATES, P.C.**
/s/ John M. LaRosa                              John Wendell Beavers, Esquire
**JOHN M. LaROSA**                              1518 Walnut Street, Suite 800
Delaware Bar I.D. # 4275                        Philadelphia, PA 19102
Two East 7th Street, Suite 302                  (215) 732-0600
Wilmington, DE 19801-3707                       trial.lawyer@verizon.net
(302) 888-1290
JLR@LaRosaLaw.com                               Attorneys for Plaintiffs

Dated: March 13, 2009