IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DARLENE DAUGHTRY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civ. No. 08-963-SLR |
| ) | |
| FAMILY DOLLAR STORES, INC., ) | |
| a Delaware corporation ) | |
| ) | |
| Defendant. ) | |

John M. LaRosa, Esquire, of Law Office of John M. LaRosa, Wilmington, Delaware, and John Wendell Beavers, Esquire, of John Wendell Beavers & Associates, P.C., Philadelphia, Pennsylvania. Counsel for Plaintiffs.

David G. Culley, Esquire, of Tybout, Redfearn & Pell, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Barbara Rittinger Rigo, Esquire, and Jacqueline R. Barrett, Esquire, of Littler Mendelson, P.C., Philadelphia, Pennsylvania, and Shanthi V. Gaur, Esquire, of Littler Mendelson, P.C., Chicago, Illinois.

**MEMORANDUM OPINION**

Dated: July 9, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

This employment discrimination suit was filed on December 23, 2008 by plaintiffs Darlene Daughtry ("Ms. Daughtry"), Kelvin Daughtry ("Mr. Daughtry"), Hope McCain ("McCain"), Candace R. Saunders ("Saunders"), Claudia M. Benson ("Benson"), Sylvia Cooper ("Cooper"), Monique Walker ("Walker"), and Daisy L. Harris ("Harris") (collectively, "plaintiffs"). (D.I. 1) Plaintiffs accuse Family Dollar Stores Inc. ("defendant") of retaliation and discrimination, based on race, sex, and religion, in violation of 42 U.S.C. §§ 1981 ("§ 1981") and 2000e, et seq. ("Title VII"), and in violation of Delaware and New Jersey state law. (D.I. 11) Defendant filed a motion to dismiss or to sever on February 27, 2009. (D.I. 9) Plaintiffs filed an amended complaint on March 13, 2009.[1] (D.I. 11) On March 27, 2009, defendant filed a second motion to dismiss or, in the alternative, to sever. (D.I. 12) Defendant accompanied this motion with a supporting brief, alleging that certain counts should be dismissed for failure to exhaust administrative remedies, failure to state a claim upon which relief can be granted, preclusion from seeking simultaneous state remedies, and improper venue. (D.I. 13) Plaintiffs filed a responsive brief on April 6, 2009, contesting most of defendants' assertions, but also making certain concessions. (D.I. 14) Defendant filed a reply brief on April 15, 2009, renewing its previous arguments. (D.I. 15) For the reasons detailed below, the court will grant in part and deny in part defendant's motion to dismiss.

---

[1] The allegations contained in plaintiffs' amended complaint now make defendant's previous motion to dismiss (D.I. 9) moot. Therefore, the court denies defendant's previous motion.

## II. BACKGROUND[2]

Defendant is a retail company incorporated in Delaware with its home office in North Carolina. (D.I. 11 at ¶ 17) Defendant operates places of business, inter alia, in New Castle, Delaware; Penns Grove, New Jersey; Pennsville, New Jersey; Salem, New Jersey; and Bridgeton, New Jersey. (Id.) The facts pertaining to each plaintiff as alleged in the amended complaint are detailed below.

### A. Ms. Daughtry

Plaintiff Ms. Daughtry is a Delaware resident of African-American descent. (Id. at ¶ 9) In or about September 2002, defendant hired Ms. Daughtry in Delaware as a Store Manager, promoted her to District Manager on September 9, 2003, and demoted her to Store Manager on June 6, 2006. (Id. at ¶¶ 20, 22) In or about December 2006 or January 2007, Ms. Daughtry received a call from the Delaware Department of Labor and Ms. Daughtry provided information in support of Tara Valdez ("Valdez"), who had filed a charge of employment discrimination against defendant. (Id. at ¶ 23-24) Shortly thereafter, certain of defendant's representatives telephoned Ms. Daughtry and "informed her not to have any conversation with anyone from the Labor Board after she refused to agree to make statements to the Labor Board as demanded by defendants." (Id. at ¶ 25) In October 2007, defendant Gus Stifano ("Stifano"), a District Manager, told Ms. Daughtry that certain of defendant's officials wanted Stifano to terminate plaintiff. (Id. at ¶ 26) Stifano informed Ms. Daughtry that he wanted to "keep her on."

---

[2]For purposes of this motion only, the facts as alleged in the amended complaint are taken as true. See Christ v. Cormick, No. 06-275, 2007 WL 2022053, at *1 (D. Del. July 10, 2007).

(*Id.*) Stifano eventually terminated Ms. Daughtry on April 20, 2007.[3] (*Id.* at ¶ 38) After plaintiff asked Stifano why she was being fired, Stifano responded, "You and I know the reason." (*Id.*) By firing her, Ms. Daughtry claims that defendant discriminated and retaliated against her because she assisted the Labor Board in the Valdez investigation and because Ms. Daughtry was a black female. (*Id.* at ¶ 39)

## B. Mr. Daughtry

Plaintiff Mr. Daughtry is a Delaware resident of African-American descent. (*Id.* at ¶ 10) Defendant hired Mr. Daughtry in or about December 2004 in New Jersey. (*Id.* at ¶ 41) A District Manager, Ed Conrad ("Conrad"), informed Mr. Daughtry that defendant had asked Conrad to locate documents so that defendant could fire Mr. Daughtry because of his wife, plaintiff Ms. Daughtry. (*Id.* at ¶ 42) Stifano informed Mr. Daughtry on June 6, 2007 that plaintiff was being terminated due to "personal business conflicts with [his] obligation to serve the best interests of the company." (*Id.* at ¶ 51) Mr. Daughtry claims that defendant fired him to retaliate against him because his wife, Ms. Daughtry, had filed an employment discrimination charge on May 23, 2007, and because defendant believed that Mr. Daughtry had participated in his wife's Title VII proceeding. (*Id.* at ¶ 53)

## C. McCain

Plaintiff McCain is a Delaware resident of African-American descent. (*Id.* at ¶ 11) In February 2007, McCain overheard George Flyzik ("Flyzik"), defendant's Regional

---

[3]The court notes the discrepancies in certain dates as alleged by plaintiffs. It seems unlikely that Stifano informed plaintiff Ms. Daughtry that defendant wanted to terminate her in October 2007, and then actually fired her in April 2007. However, for purposes of this motion, the court accepts all of plaintiffs' factual allegations as true.

Vice President, speaking on his cell phone with Stifano. (*Id.* at ¶ 59) McCain heard Flyzik say, "I thought you said that you fired all these niggers especially the Black females and that [plaintiff Ms. Daughtry] would be gone already too. . . . [M]ake it happen fast." (*Id.*) McCain then confronted Flyzik and said, "I don't know who you were calling a nigger, I'm not nobody's nigger." (*Id.* at ¶ 60) Flyzik responded that "if you know what is best for you, you will keep your mouth shut." (*Id.* at ¶ 61) Defendant then ordered plaintiff Ms. Daughtry to fire plaintiff McCain. (*Id.*) Although Ms. Daughtry believed that the termination was in retaliation, Ms. Daughtry complied with defendant's directive and fired McCain. (*Id.*) The reason given to McCain for the termination was that her background was bad. (*Id.* at ¶ 62) McCain claims that defendant discriminated against her because of her race and sex. (*Id.* at ¶ 64)

### D. Saunders

Plaintiff Saunders is a Delaware resident of African-American descent. (*Id.* at ¶ 12) Defendant hired Saunders on or about February 25, 2007. (*Id.* at ¶ 66) On May 1, 2007, Saunders overheard two of defendant's Managers speaking and one of them remarked that "it looks as if all [plaintiff Ms. Daughtry] did was hire a bunch of lazy-ass niggers in this store, especially the fat and lazy one," referring to Saunders. (*Id.* at ¶ 71) After Saunders revealed that she had overheard the comment by saying, "excuse me," the Manager responded that "it was just a joke." (*Id.* at ¶ 72) After returning from lunch, "[Saunders] was called into the office and informed that she was terminated." (*Id.* at ¶ 73) The reason proffered was that "[Saunders] wasn't what [the Manager]

4

wanted in an employee, and she didn't fit his work ethic." (*Id.*) Saunders claims that defendant discriminated against her on the basis of her race and sex. (*Id.* at ¶ 74)

### E. Benson

Plaintiff Benson is a Pennsylvania resident of African-American descent. (*Id.* at ¶ 13) After being hired on May 14, 2006, Benson served as a Manager for defendant before she was terminated on December 7, 2006. (*Id.* at ¶ 76) Stifano informed Benson that she was being fired for "insubordination." (*Id.* at ¶ 78) Prior to Benson's termination, one of defendant's District Managers told Benson that he was going to "get rid of all the Black female managers in his district." (*Id.* at ¶ 79) Stifano told plaintiff Ms. Daughtry, "You hired a Black Muslim [meaning plaintiff Benson], are you sure she's not going to bomb the company?" (*Id.* at ¶ 80) Benson claims that defendant discriminated against her on the basis of her race, sex, and religion. (*Id.* at ¶ 81)

### F. Cooper

Plaintiff Cooper is a Pennsylvania resident of African-American descent. (*Id.* at ¶ 14) Defendant hired Cooper as a Manager on May 14, 2006 at a New Jersey store. (*Id.* at ¶ 83) Although Cooper had performed her duties with competence, Stifano terminated her on December 7, 2007 because Cooper's store had been plagued with numerous theft-related incidents. (*Id.* at ¶¶ 86, 88) Cooper claims that defendant discriminated against her because of her race and sex. (*Id.* at ¶ 89)

### G. Walker

Plaintiff Walker is a Pennsylvania resident of African-American descent. (*Id.* at ¶ 15) Defendant hired Walker in Delaware in or around October 2002. (*Id.* at ¶ 91)

Defendant terminated plaintiff Ms. Daughtry on April 20, 2007. (*Id.* at ¶ 94) Ten days later, Stifano informed Walker that, if she continued communicating with Ms. Daughtry, defendant "could not use [Walker]." (*Id.*) Walker responded that she did not have any problems with Ms. Daughtry. (*Id.* at ¶ 95) Stifano then terminated Walker. (*Id.*) Walker claims that defendant retaliated against her and discriminated against her on the basis of her race and sex. (*Id.* at ¶ 96)

### H. Harris

Plaintiff Harris is a New Jersey resident of African-American descent. (*Id.* at ¶ 16) Defendant hired Harris on November 27, 1997. (*Id.* at ¶ 98) After September 2006, Stifano "made several racial as well as gender-based offensive comments." (*Id.* at ¶ 101) Stifano told Harris that she should refer to Stifano as "Master Gus." (*Id.* at ¶ 102) On several other occasions, Stifano commented to Harris, "Maybe the job is too much for you. After all, you are not that smart." (*Id.* at ¶ 103) Stifano terminated Harris on February 27, 2007, saying that "he did not want any Black females working for him in his district." (*Id.* at ¶ 105) Harris claims that defendant discriminated against her because of her race and sex. (*Id.* at ¶ 106)

## III. STANDARD OF REVIEW

### A. Motion to Dismiss for Improper Venue

A court may dismiss a lawsuit for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). However, the Federal Rules of Civil Procedure do not contain any specific venue provisions or requirements. A court, therefore, must determine whether venue is proper in accordance with the appropriate statutes when deciding a motion to dismiss

for improper venue. *See Albright v. Gord*, Civ. No. 02-304, 2002 WL 1765340, at *3 (D. Del. July 31, 2002) (citations omitted). The moving party has the burden of proving that venue is improper. *See id.* (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982)). "[I]n ruling on defendant['s] motion[,] the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

In reviewing a motion filed under Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.*

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

7

*Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d. Cir. 2008) (citations omitted).

### C. Motion to Sever

Federal Rule of Civil Procedure 21 gives courts discretion to sever parties due to misjoinder. Under Rule 20(a), defendants can be joined together if

> there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

## IV. DISCUSSION[4]

### A. Exhaustion of Administrative Remedies

The court will first analyze the jurisdictional question of whether plaintiffs properly exhausted their administrative remedies, thereby enabling them to bring this suit into federal court. Title VII requires exhaustion of administrative remedies prior to filing suit in federal court. *See* 42 U.S.C. § 2000e-5(e)(1) (2006). Plaintiffs assert in the amended complaint that they "have exhausted all administrative remedies having filed timely charges of discrimination with the [United States Equal Employment Opportunity Commission ("EEOC")] and each having received "Right to Sue" letters issued on or about October 2, 2008." (D.I. 11 at ¶ 6) However, in their brief in reply to defendant's motion to dismiss, plaintiffs concede that their exhaustion was not complete. (D.I. 14 at 11-12) Specifically, plaintiffs explain that both Ms. Daughtry's and Walker's claims

---

[4]Defendant attempted to provide enough documentation on its second motion to dismiss to convert the motion into a motion for summary judgment. However, defendant appears to have omitted from its exhibits several documents referenced in its brief. Nevertheless, the court will consider the motion before it as a motion to dismiss and will accept as true all factual allegations in plaintiffs' amended complaint.

8

initially filed with the EEOC alleged only retaliatory discrimination. (*Id.* at 11) By contrast, in the amended complaint, both of these plaintiffs allege, in addition to retaliatory discrimination, racial and sexual discrimination.[5] (D.I. 11 at ¶¶ 39, 96) Both plaintiffs have acknowledged that they cannot properly allege discrimination based on race or sex based on their failure to exhaust administrative remedies on those specific bases. (D.I. 14 at 11)

Plaintiff Saunders avers that her claim initially filed with the EEOC alleged only racial discrimination against defendant. (*Id.*) However, in the amended complaint, Saunders alleged discrimination based on both race and sex. (D.I. 11 at ¶ 74) Saunders has acknowledged that she can properly allege discrimination based only on race, because her initial EEOC claim did not allege sex as a basis for discrimination. (D.I. 14 at 12)

In short, although the amended complaint asserts that plaintiffs have fully exhausted their administrative remedies, plaintiffs have subsequently conceded that full

---

[5]This court has noted that the "ambit of a civil complaint, once a right-to-sue letter is issued by the EEOC, is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination,' regardless of the actual scope of the EEOC investigation." *Smiley v. Daimler Chrysler*, 589 F. Supp. 2d 471, 486 (D. Del. 2008) (internal quotation marks omitted) (quoting *Hicks v. ABT Assocs.*, 572 F.2d 960, 966 (3d Cir. 1978)). Therefore, the "relevant test for determining whether plaintiff must exhaust his administrative remedies, . . . is 'whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'" *Id.* (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).

exhaustion has not occurred with respect to the above-identified plaintiffs.[6] Therefore, the court will grant defendant's motion to dismiss on the issue of exhaustion with respect to plaintiff Ms. Daughtry and plaintiff Walker on their allegations of racial and sexual discrimination under the Title VII claim of count I of the amended complaint. The court will also grant defendant's motion to dismiss on the issue of exhaustion with respect to plaintiff Saunders on her allegation of sexual discrimination under the Title VII claim of count I. The court will deny defendant's motion to dismiss on the issue of exhaustion with respect to count I in all other aspects.[7]

### B. Venue

The court will next analyze the question of venue. All parties agree that venue in Delaware is not proper with respect to the Title VII claims of plaintiffs Mr. Daughtry, Benson, Cooper, and Harris pursuant to Title VII's specific venue statute, 42 U.S.C. §

---

[6]Although, on a motion to dismiss, the court must confine its consideration to the pleadings, see Fed. R. Civ. P. 12(d), the court will take notice of plaintiffs' concessions concerning the impropriety of proceeding on the above-mentioned bases for their discrimination claims.

[7]Plaintiffs' Title VII discrimination claims as contained in count I of the amended complaint are as follows:  (1) Ms. Daughtry - retaliatory discrimination; (2) Mr. Daughtry - retaliatory discrimination; (3) McCain - racial and sexual discrimination; (4) Saunders - racial discrimination; (5) Benson - racial, sexual, and religious discrimination; (6) Cooper - racial and sexual discrimination; (7) Walker - retaliatory discrimination; and (8) Harris - racial and sexual discrimination.

2000e-5(f)(3).[8] (D.I. 14 at 15; D.I. 15 at 4) The parties also agree that venue is proper in New Jersey with respect to said plaintiffs' Title VII claims pursuant to the specific venue statute. (D.I. 13 at 18; D.I. 14 at 15) The court agrees with the parties' conclusions[9] and will deal with plaintiffs' Title VII claims accordingly.

Count I is based exclusively on Title VII. Therefore, the court dismisses without prejudice count I with respect to plaintiffs Mr. Daughtry, Benson, Cooper, and Harris to allow for refiling in a proper venue. Count I with respect to the remaining plaintiffs (Ms. Daughtry, McCain, Saunders, and Walker) remains in Delaware.[10]

Although count V of the amended complaint is based partially on Title VII, the count involves only plaintiff Ms. Daughtry, whose ability to establish venue in Delaware is not challenged. Therefore, count V is not implicated by this venue analysis.

---

[8]Title VII's special venue statute provides for venue in the following districts: (1) where "the unlawful employment practice is alleged to have been committed;" (2) where "plaintiff would have worked but for the alleged unlawful employment practice;" (3) where "the employment records relevant to such practice are maintained and administered;" and (4) where the employer "has his principal office" if he cannot be found within the district where "plaintiff would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3) (2006).

[9]The amended complaint indicates that defendant's allegedly unlawful employment practices against plaintiffs Mr. Daughtry and Cooper occurred only in New Jersey, making the District of New Jersey a proper venue under Title VII's special venue statute. (D.I. 11 at ¶¶ 41, 83) Although the amended complaint does not indicate where defendant's allegedly unlawful employment practices against plaintiffs Benson and Harris occurred, the court notes that both parties agree that venue in Delaware is not proper and that venue in New Jersey is proper with respect to plaintiffs Benson and Harris pursuant to Title VII's special venue statute.

[10]Nothing in the amended complaint suggests that venue, pursuant to the special venue statute, would be proper in New Jersey for the remaining four plaintiffs' (Ms. Daughtry, McCain, Saunders, and Walker) Title VII claims in count I. Furthermore, defendant does not challenge these four plaintiffs' ability to show proper venue in Delaware.

11

Count VI of the amended complaint involves claims by both plaintiff Mr. Daughtry and plaintiff Walker under Title VII and § 1981. As discussed above, the parties agree that venue is not proper in Delaware, but is proper in New Jersey, for plaintiff Mr. Daughtry's Title VII claims. However, Mr. Daughtry claims relief in count VI under both Title VII and § 1981. To determine venue for a claim based on § 1981, the general venue provision, 28 U.S.C. § 1391(b),[11] must be consulted. See *Sinwell v. Shapp*, 536 F.2d 15, 17 (3d Cir. 1976). Pursuant to § 1391(b), venue is proper in New Jersey with respect to Mr. Daughtry's § 1981 claim, as contained in count VI, because Mr. Daughtry was employed by defendant in New Jersey stores and because the allegedly unlawful employment practices occurred within the District of New Jersey. (D.I. 11 at ¶ 41) However, under § 1391(c), venue would also be proper for Mr. Daughtry's § 1981 claim in Delaware as plaintiffs allege in the amended complaint that defendant operates a store at 2082 New Castle Avenue, New Castle, Delaware. (*Id.* at ¶ 17) Because the operation of the above store would subject defendant to personal jurisdiction in Delaware, see § 1391(c), venue in Delaware is proper under § 1391(b) and, therefore, the court will not dismiss plaintiff Mr. Daughtry's § 1981 claim. However, as discussed

---

[11]Section 1391(b), in relevant part, provides that:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except otherwise provided by law, be brought only in (1) a judicial district where any defendant resides . . . [and] (2) a judicial district in which a substantial part of the events . . . giving rise to the claim occurred.

28 U.S.C. § 1391(b)(1)-(2) (2006). For purposes of venue, a defendant corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction." § 1391(c).

above, because venue in Delaware is not proper with respect to plaintiff Mr. Daughtry's Title VII claim of count VI, the court will dismiss without prejudice this claim for refiling in a proper venue.[12]

### C. Preclusion from Simultaneously Seeking State Remedies

The parties agree that plaintiffs are barred from simultaneously seeking remedies under Title VII and under the Delaware Discrimination in Employment Act ("DDEA"), 16 Del. C. § 711(a).[13]  (D.I. 14 at 14; D.I. 15 at 4)  All eight plaintiffs simultaneously seek remedies under both Title VII and the DDEA in count III of the amended complaint.  The court, therefore, will grant defendant's motion to dismiss with respect to count III.

### D. Plaintiff Walker's Discriminatory Retaliation Claims[14]

Defendant moves, under Rule 12(b)(6), to dismiss counts I and VI as they relate to plaintiff Walker's claims of retaliation.  To maintain a claim for discriminatory retaliation under Title VII, a plaintiff must demonstrate that:  (1) she engaged in protected activity; (2) the defendant employer took adverse action against her; and (3) a causal link exists between the protected activity and defendant's adverse action.  See

---

[12]Defendant does not challenge plaintiff Walker's claims as contained in count VI of the amended complaint.

[13]This court has held that a plaintiff who files claims under Title VII is precluded from concomitantly pursuing state law claims under the DDEA, pursuant to 19 Del. C. § 714(c).  *Schlifke v. Trans World Entm't Corp.*, 479 F. Supp. 2d 445, 450 n.8 (D. Del. 2007) (citation omitted).

[14]Because the court grants defendant's motion to dismiss with respect to count III, the court will only consider counts I and VI with respect to defendant's 12(b)(6) motion concerning plaintiff Walker.

*Blozis v. Mellon Trust of Del. Nat'l Ass'n*, 494 F. Supp. 2d 258, 270 (D. Del. 2007) (citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)). Defendant alleges that plaintiff Walker fails to satisfy the first element in that she "fails to identify any alleged protected conduct in which she claims to have engaged." (D.I. 13 at 15) In the amended complaint, plaintiff Walker claims that defendant Stifano told her

> that if she continued to communicate with [Ms.] Daughtry, that the [defendant] company could not use her.
> [Walker] told . . . Stifano that she didn't have any problems with [Ms.] Daughtry, and she was then told to return her keys and leave the premises. Upon information and belief, Defendant believed Plaintiff [Walker] opposed the unlawful discriminatory treatment of [Ms.] Daughtry, which she in fact, did. Defendant also believed that Plaintiff [Walker] supported [Ms.] Daughtry's participation in the [Valdez] investigation. Upon information and belief, Plaintiff [Walker] was retaliated against . . . in that she was fired because she supported her manager, [Ms.] Daughtry, in the [Valdez] discrimination investigation, and opposed the defendant's unlawful and discriminatory treatment of [Ms.] Daughtry.

(D.I. 11 at ¶¶ 94-95)

The question that must be addressed is whether the facts in plaintiff Walker's amended complaint, when accepted as true and viewed in the light most favorable to her, sufficiently allege the "protected activity" required to state a claim for discriminatory retaliation. Title VII's anti-retaliation provision has two clauses defining "protected activity" - the opposition clause and the participation clause. *Crawford v. Metro. Gov't of Nashville and Davidson County*, 129 S. Ct. 846, 850 (2009). The parties agree that plaintiff Walker's allegations trigger the opposition clause. The opposition clause, as contained in Title VII, provides that it "shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed

14

any practice made an unlawful employment practice by this subchapter." *Duffy v. Dep't of State*, 598 F. Supp. 2d 621, 631 (D. Del. 2009) (alterations in original).

In *Crawford*, the Supreme Court recently delineated the parameters of Title VII's opposition clause:

> "Oppose" goes beyond "active, consistent" behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to "oppose" slavery before Emancipation, or are said to "oppose" capital punishment today, without writing public letters, taking to the streets, or resisting the government. And we would call it "opposition" if an employee took a stand against an employer's discriminatory practices not by "instigating" action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons. There is, then, no reason to doubt that a person can "oppose" by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.

*Crawford*, 129 S. Ct. at 851 (internal citation omitted). As the court understands the legal principles discussed above, whether an employee's "opposing" conduct is active or passive, it must still be specific in nature. For instance, in *Crawford*, an officer of the employer sought information from the plaintiff about a supervisor's behavior. In response to the request for information, the plaintiff recounted specific examples of said supervisor's behavior. Although the plaintiff never explicitly referred to the recounted acts as "discriminatory" or "harassing," she reported actual conduct within the context of an investigation about a supervisor's allegedly unlawful conduct. The Supreme Court found that such responses were sufficient to constitute the protected activity of Title VII's opposition clause. *See also Robinson v. Se. Pa. Transp. Auth. Red Arrow Div.*,

982 F.2d 892 (3d Cir. 1993) (plaintiff's letters constituted opposition, where plaintiff explicitly referenced the unlawful practice and expressed his opposition thereto). In contrast, the Third Circuit has concluded that complaints about unfair treatment in general, as compared to specific complaints about unfair treatment, do not "constitute the requisite 'protected conduct' for a prima facie case of retaliation." *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995). *See also Perry v. Harvey*, No. 08-3339, 2009 WL 1566791 at *3 (3d Cir. June 5, 2009) (an employee's opposition to unlawful discrimination "must not be equivocal [or vague].") (alteration in original) (citation omitted).

As discussed above, plaintiff Walker alleges that: (1) defendant Stifano ordered her to cease communicating with plaintiff Ms. Daughtry; (2) Walker responded by saying that she did not have any problems with Ms. Daughtry; and (3) Stifano then fired her. (D.I. 11 at ¶¶ 94-95) Walker follows her recitation of "facts" with the speculation that defendant "believed that [Walker] opposed the unlawful discriminatory treatment of [Ms.] Daughtry, which she in fact, did." (*Id.* at ¶ 95) The above allegations do not pass muster under either *Crawford* or *Barber*, as plaintiff Walker's statement and the context in which it was made were neutral. Only through conclusory speculation does plaintiff Walker connect her statement to any alleged discriminatory conduct.[15] Under *Twombly*, such allegations are not sufficient "to raise a right to relief above the speculative level."

---

[15]Although the Third Circuit in *Robinson* has cautioned that "a discrimination analysis must concentrate not on individual incidents, but on the overall scenario," 892 F.2d at 895-96, nevertheless, there are no allegations in the amended complaint that all of the plaintiffs shared the same knowledge at any time before the litigation was instituted.

16

550 U.S. at 555. Therefore, because plaintiff Walker has failed to state a claim, the court will grant defendant's 12(b)(6) motion to dismiss with respect to counts I and VI as they relate to plaintiff Walker.

### E. Severance

Federal Rule of Civil Procedure 21 gives courts discretion to sever parties due to misjoinder. The case at bar is still in its infancy and discovery has not yet begun. The court, in its discretion, finds that it is too early to consider severance. Therefore, defendant's motion to sever is denied.

## V. CONCLUSION

For the aforementioned reasons, the court grants in part and denies in part defendant's motion to dismiss and denies defendant's motion to sever. As a result, plaintiffs' amended complaint may be litigated against defendant in this district as follows: (1) count I with respect to plaintiffs Ms. Daughtry, McCain and Saunders; (2) count II in its entirety; (3) count IV in its entirety; (4) count V in its entirety; and (5) count VI with respect to plaintiff Mr. Daughtry's § 1981 claim.

An appropriate order shall issue.